IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**BEVERLY POPE**                                                                                          **PLAINTIFF**

**v.**                                                                    **CIVIL ACTION NO.: 3:24-cv-60-JMV**

**COMMISSIONER OF SOCIAL SECURITY**                                                       **DEFENDANT**

## ORDER

On March 1, 2022, Plaintiff filed an application for Title II Social Security disability insurance benefits, alleging disability as of February 28, 2022. On July 14, 2022, the claim was denied initially, and again upon reconsideration on December 6, 2022. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and on June 6, 2022, ALJ Roger Lott presided over the hearing. On July 6, 2023, ALJ Lott denied the plaintiff's claim.

Subsequently, Plaintiff requested review from the Appeals Council. On January 25, 2024, the Appeals Council declined review, thus making the ALJ's decision the final decision of the Commissioner of Social Security. For the reasons that follow, the undersigned finds that the ALJ's decision shall be AFFIRMED.

**The Case Below:**

The ALJ determined that the plaintiff, 50 years old on February 28, 2022, the Alleged Onset Date ("AOD"), met the insured status requirements through December 31, 2027, and had past relevant work as a court clerk, DOT 243.362-010, which is semi-skilled work generally performed at a sedentary exertional level.

Plaintiff's medical evidence reflects that on June 28, 2021, Dr. Mohammad Rafieetary of the Charles Retina Institute noted blurry vision, timing constant. (Tr. 412). Dr. Rafieetary

diagnosed Plaintiff with Type 2 diabetes mellitus with severe nonproliferative diabetic retinopathy with macular edema in both the Plaintiff's right and left eyes. (Tr. 414).

On December 7, 2021, Plaintiff was treated by Dr. Mark Campbell who diagnosed active medical problems of groin abscess, CAD in native artery, carotid bruit present, deep vein thrombosis (DVT), hyperlipidemia, implantable defibrillator, ischemic cardiomyopathy, pulmonary embolus, syncope, tachycardia, and type 2 diabetes mellitus. (Tr. 332).

On February 25, 2022, Dr. Rafieetary affirmed the diagnoses of Type 2 diabetes mellitus with severe nonproliferative diabetic retinopathy with macular edema in both the Plaintiff's right and left eyes. (Tr. 387). Dr. Rafieetary planned to monitor the Plaintiff's peripheral monocular vision. (Tr. 387).

On February 28, 2022, Dr. Scott O'Sullivan administered an eye injection to the Plaintiff's right eye to treat her type 2 diabetes mellitus with severe nonproliferative diabetic retinopathy. (Tr. 383).

On January 10, 2023, Dr. Rafieetary treated the Plaintiff and noted the Plaintiff stated her vision is always really bad for about 7 days after getting injections, and she now had an ongoing achy pain in both eyes; and that both eyes are constantly out of focus, fuzzy, and achy. (Tr. 509).

In the hearing decision, the ALJ determined that Plaintiff's severe medical impairments were coronary artery disease with cardiomyopathy and implanted defibrillator, diabetes mellitus with retinopathy, and obesity. (Tr. 18).

The ALJ further found that the record documents hypertension, hyperlipidemia, history of DVT, history of pulmonary embolus, and history of a shoulder disorder, but that "neither the record nor the claimant's testimony establishes preponderant evidence that these conditions significantly

2

limit the ability to perform basic work activities" and "accordingly, neither these physical impairments nor their residual effects are severe…" (Tr. 18).

The ALJ found the Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. She can occasionally balance, stoop, crouch, kneel, and crawl. She can avoid temperature extreme work environments. She must avoid unprotected hazards and hazardous moving machinery. She can avoid hazards and common workplace obstacles. She can see to work with small objects and read print larger than that in a typical newspaper article. (Tr. 19).

On July 12, 2022, State Agency Medical Consultant, opined that the Plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; could stand, walk, and sit 6 hours in an 8-hour day; could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; but never climb ladders, ropes, or scaffolds. (Tr. 102-103). Dr. Sporn further opined that the Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, and hazards such as machinery and heights. (Tr. 103). On December 4, 2022, Dr. Saddler affirmed Dr. Sporn's above opinion, with one exception—that the Plaintiff could climb ladders, ropes, and scaffolds occasionally. (Tr. 111).

**Issues and Arguments:**

Before this court, Plaintiff now argues that the ALJ's decision is not supported by substantial evidence because the ALJ assessed her vision impairment limitations without a physician's opinion.

Specifically, Plaintiff argues that while the ALJ recognized that the Plaintiff's retinopathy resulted in vision limitations and restrictions which affect work-related abilities, since there was no function-by-function medical assessment of how the Plaintiff's vison was limited, the ALJ resorted to interpreting the medical data to formulate his own opinion of the degree of limitation and then incorporated his lay opinion into the RFC, and this was legal error.

In fact, Plaintiff asserts that because the medical evidence showed she has a vison impairment, the ALJ was required to order a consultative optical exam to specifically assess the degree of Plaintiff's vision limitation. In support her contention, she cites 20 C.F.R. § 404.1519a(a)(2) and 416.945.[1] Plaintiff contends the ALJ improperly relied on his unsupported opinion as to the limitations presented by the Plaintiff's medical conditions, contrary to *Whalen v. Kijakazi*, No. 3:21-CV-24-DAS, 2022 WL 3333487, at *4 (N.D. Miss. Aug. 11, 2022) and *Williams v. Astrue*, 355 F. App'x 828, 832, n. 6 (5th Cir. 2009) (holding "an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions."). As a consequence, Plaintiff contends substantial evidence did not support the ALJ's RFC determination and the ultimate question of disability.

In addition, Plaintiff complains that the ALJ did not define "small objects" or "a font size larger than that of a newspaper" and, therefore, the VE's testimony was unreliable.

---

[1] 20 CFR § 416.945 states: We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. (See § 416.912(c).) However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources. (See §§ 416.912(d) through (e).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 416.913.)

Lastly, Plaintiff argues the ALJ's failure to properly evaluate the Plaintiff's vision is not harmless, explaining that in the hearing decision, the ALJ found based on the VE's testimony, that the Plaintiff is capable of performing the jobs of 1) marker (DOT #209.587-034), 2) laundry aid (DOT #302.685-010), and 3) clerk (DOT #295.367-026), and that the jobs of marker and laundry worker require frequent near acuity, and the last job of clerk requires far acuity. Thus, Plaintiff contends given the ALJ's evaluation of her visual limitations, it is not possible to determine if she can perform the jobs identified by the VE, making remand warranted.

In contrast to Plaintiff's assertion, the Commissioner argues that ALJ fully considered Plaintiff's impairments and appropriately included restrictions in the RFC to adequately account for them. Namely, the ALJ did so by including in the RFC restrictions that Plaintiff must avoid unprotected hazards and hazardous moving machinery; is able to avoid hazards and common workplace obstacles; and can see to work with small objects and read print larger than that in a typical newspaper article. The Commissioner asserts also that the record supports these findings, noting they show Plaintiff had improved macular edema and 20/20 or 20/30 vision, and she was able to perform activities such as preparing meals, doing laundry, ironing, making beds, sweeping, doing dishes, shopping, and driving.

Moreover, the Commissioner notes Plaintiff does not show what additional limitations the record supported beyond those already in the RFC. She opted instead to argue that the ALJ improperly interpreted the medical evidence, that the RFC determination was not based on a medical opinion, and that the ALJ should have ordered additional medical evidence. With respect to these assertions, the Commissioner cites *Miller v. Kijakazi*, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) explaining that, in the Fifth Circuit, an ALJ is not required to adopt a specific physician's assessment, but is instead responsible for interpreting the medical evidence to

5

determine a claimant's capacity for work. In this case, the Commissioner asserts the record was sufficiently developed and provided the ALJ with a broad view of Plaintiff's disability claim. Therefore, no additional evidence was required, citing *White v. Soc. Sec. Admin.*, 129 Fed. App'x 905, 906 (5th Cir. 2005) ("[T]he record was sufficiently developed and, therefore, the ALJ was not required to obtain additional medical expert testimony.").

Finally, with respect to the assertion that the ALJ did not define "small objects" or font size larger than a newspaper making the VE's testimony based thereon unreliable, the Commissioner points out the VE asked a clarifying question about the Plaintiff's visual limitations at the hearing and displayed no trouble understanding these restrictions when testifying that a person with these restrictions could perform light, unskilled jobs. If Plaintiff had any question about the meaning of these restrictions, the proper forum to raise them would have been at the hearing where the vocational expert could have addressed them. Plaintiff did not do so.

**The Standard of Review and Burden of Proof as Applied in this Case Dictate a Denial of the Appeal:**

It is long established that this Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court explained:

> The phrase substantial evidence is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence…is

> more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotations and brackets omitted).

In applying the substantial evidence standard, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The claimant has the burden of proof at the first four steps of the sequential evaluation process. *See Greenspan*, 38 F.3d at 236. At step five, the Commissioner has the burden to produce evidence about the existence of work in the national economy. *See* 20 C.F.R. § 404.1512(b)(3). Once the Commissioner shows that a claimant's RFC and vocational profile would allow performing a significant number of jobs in the national economy, the burden shifts to the claimant to rebut this finding. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

As applied to the facts of this case, I find that Plaintiff has established no legal error. First, contrary to her assertion that the ALJ improperly interpreted medical evidence, the ALJ was not required to base the RFC on any particular opinion, but is instead responsible for interpreting the medical evidence to determine a claimant's capacity for work as explained in *Miller v. Kijakazi*, 2023 WL 234773 at *4 (5th Cir. Jan. 18, 2023) and *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). In assessing Plaintiff's functional limitation due to vision impairment, the ALJ here appropriately reviewed the vision records, including the multiple medical assessments of 20/30 (or like) vision, as well as her daily activities and assigned a functional assessment based thereon.

And, while the ALJ may order a consultive exam, it is not legal error to not do so, unless to do so was necessary. Here, neither the ALJ's decision nor Plaintiff's memorandum in support of her appeal reflects such a necessity. As for the complaint that that the reference to "small objects" or "a font size larger than a typical new paper article" rendered the VE's testimony based in part thereon unreliable, I find that it appears from the transcript that had the vocational expert had any question concerning the same, he satisfied himself with his inquiry of the ALJ at the hearing. Moreover, Plaintiff's counsel did not raise any question about the meaning of these restrictions at the hearing, illustrating thereby the lack of their significance as explained in *Carey v. Apfel*, 230 F.3d 131, 146-147 (5th Cir. 2000).

In conclusion, I do not find any prejudicial legal error to warrant remand, and I find the opinion is support by substantial evidence. Accordingly, the ALJ's decision shall be and is hereby AFFIRMED.

**SO ORDERED** this, the 10th day of October, 2024.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**